UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GREGORY L. DAVIS,

    Plaintiff,

v.

RAY MABUS, *in his official capacity as Secretary of the Navy,*

    Defendant.

Civil Action No. TDC-14-0148

## MEMORANDUM OPINION

Plaintiff Gregory L. Davis is an aerial photographer formerly employed by the Department of the Navy (the "Navy"). When the Navy terminated Davis's employment after less than a year, Davis sued, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (2012) (Count I), sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (2012) (Count II), and retaliation in violation of Title VII (Count III). Presently pending before the Court is the Navy's Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 7. Having reviewed the Complaint and the parties' memoranda, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). Because Davis fails to state a plausible claim for age or sex discrimination, the Motion, construed as one to dismiss, is granted as to Counts I and II. Davis is granted leave to amend the Complaint as to those Counts within 14 days. The Motion is denied as to Count III.

**BACKGROUND**

The following facts are presented as alleged in the Complaint. *See* ECF No. 1. On October 11, 2011, the Navy hired Davis, then 39 years old, as a senior scientific/technical photographer at Naval Air Station Patuxent River, Maryland. He worked specifically with Air Test and Evaluation Squadron Two Three ("VX 23"), one of three test squadrons that partly comprise Naval Test Wing Atlantic ("NTWL"), an air wing responsible for testing and evaluating aircraft and weapon systems. At VX 23, Davis's primary role was to produce high resolution images of the aircraft and weapon systems during tests. High quality images are an integral part of the testing and evaluation process, and the Navy relies heavily on aerial photographers not only to provide good images, but also to play an active role in analyzing them.

As a senior scientific/technical photographer, Davis was required to have a broad knowledge of the aircraft and weapon systems, the Navy's testing and evaluation processes, and advanced photographic equipment. He was also required to have the expertise necessary to assist in planning tests, specifically as it related to how photographs and video would be captured under difficult conditions and what camera equipment should be used.

Notably, Davis's job also required him to serve as a team leader for other professional photographers. Two such photographers, Kelly Schindler and Elizabeth Wolter, women in their twenties who were government contractors employed by NTWL and Wyle Laboratories, Inc., respectively, served at VX 23 with Davis on a part-time basis. As Davis understood his role, he was the team leader to Schindler and Wolter. He was to direct Schindler and Wolter in completing their assignments and to take ultimate responsibility for the quality of the team's overall work.

Davis's direct supervisor was Gerald Garay, the Technical Director of VX 23. According to Davis, Garay assigned work to Schindler and Wolter and treated them preferentially. Although Davis was supposed to be first in line for aerial photography assignments and had more training, experience, and relevant knowledge than Schindler and Wolter, Garay gave them more flight assignments, and more favorable flight assignments, while Davis received so little flight time that he failed to maintain the minimum flight requirement. Wolter repeatedly failed to perform scheduled flight duties without consequence, even though a medical condition she had was not serious enough to classify her as not able to fly. Schindler was repeatedly late for, or did not attend, flight briefs and, on one occasion, arrived only after the pilot reached her by telephone. Despite VX 23's policy to ground photographers who did not attend the flight brief, Schindler flew anyway and was never held accountable. Though Schindler and Wolter's photographs were of inferior quality, Garay gave them each a 25 percent flight pay bonus.

According to Davis's coworkers, Garay had a history of hiring younger women who "looked good in a flight suit," Compl. ¶ 46, ECF No 1, and he specifically had an overly friendly, unprofessional relationship with Schindler. Garay met privately with Schindler at least twice a week for several months, and Schindler was seen in Garay's office so often that others referred to her as Garay's "girl toy." Id. ¶ 49. In contrast, during the nearly nine-month period that Davis worked at VX 23, Garay met with him privately only four times – two of which were on Davis's first and last days of employment. Garay also prohibited Davis from serving as team leader and isolated Davis by placing him in a building by himself, where Davis would miss calls about potential flight assignments if he left the building to perform required tasks at a different location.

Throughout Davis's service, Garay allowed others to treat Davis disrespectfully, and he sent Davis multiple condescending and hostile emails. At some point, allegedly in violation of the Navy's policy on addressing employment matters, Garay emailed a "survey that put [Davis] in a bad light with all aircrew." *Id.* ¶ 89. After the email survey, Davis "was treated as a novice by coworkers," *id.* ¶ 92, which, Davis alleges, created an unnecessary flight risk because it caused a lack of trust among the crew. Moreover, Garay accused Davis of damaging aircraft and directed Davis to eschew regulations of the United States Department of Defense on reviewing and releasing photographs. On May 15, 2012, Garay emailed Davis to accuse him of releasing a photograph for public use without authorization.

On May 16, 2012, Davis filed a formal complaint for age and sex discrimination and hostile working environment with the Navy's Equal Employment Opportunity ("EEO") office. That same day, Garay directed Schindler and Wolter to stop referring to Davis as the team leader. On June 20, 2012, Garay directed Davis to create a log sheet that would allow the contractors to sign out high-value government equipment without Davis's involvement and directed the security office to issue to Schindler and Wolter keys to the building in which Davis worked. When Davis arrived at work on June 25, 2012, he discovered he was locked out of the building where he worked alone. Finally, on June 28, 2012, Garay informed Davis, then 40 years old, that he had been terminated.

Following Davis's termination, Garay unsuccessfully tried to install Schindler as a senior scientific/technical photographer and later created a support contract position specifically for her. After pursuing EEO administrative remedies, Davis filed this action on January 17, 2014. The Navy now moves to dismiss.

## DISCUSSION

I.  **Legal Standard**

The Navy has moved to dismiss or, in the alternative, for summary judgment, and has attached 18 exhibits to its Motion. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation and internal quotations omitted). Although the notice requirement is not onerous, requiring only that the nonmoving party be aware that material outside the pleadings is pending before the Court, *id.*, the reasonable opportunity requirement is more demanding. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011).

Here, the notice requirement is met. The Navy entitled its Motion as one that could alternatively be decided as a motion for summary judgment. Davis acknowledges that he has been given notice by referring to "summary judgment" in the title of his memorandum in opposition to the motion, and he attached exhibits of his own for the Court's consideration. The Court, however, is not satisfied that Davis, even having engaged in administrative litigation, has had a reasonable opportunity to discover the information essential to oppose a motion for summary judgment. In his counsel's Rule 56(d) affidavit, Davis voices the need to depose Schindler and Wolter to unearth evidence that could support his discrimination claims, such as evidence to establish that they were treated more favorably than Davis in terms of the amount of time they spent with Garay, the types of assignments they received, and the amount of flight time they received. Such information from key witnesses could provide circumstantial evidence to support Davis's claim that his termination was motivated by a preference for young female employees or a desire to retaliate.

Because the proceedings before this Court are in the earliest stage, with no discovery having been taken, and because the asserted claims are fact specific, it is not appropriate to consider this matter as a summary judgment motion before Davis has had an opportunity to collect evidence from such witnesses. *See Harrods Ltd.*, 302 F.3d at 244 ("When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(d) affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary."). Accordingly, the Court excludes all attached exhibits from consideration and construes the Navy's motion as a motion to dismiss under Rule 12(b)(6) for failure to state a claim.

In deciding a motion to dismiss, the Court must determine whether the complaint alleges facts sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff need not always plead a *prima facie* case to state a plausible claim, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In making such a determination, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.    Age and Sex Discrimination**

In Counts I and II, Davis alleges discrimination on the basis of age and sex in violation of the ADEA and Title VII. Under the ADEA, employers may not discriminate against individuals because of their age, 29 U.S.C. § 623(a)(1), while Title VII prohibits discrimination on the basis of sex, 42 U.S.C. § 2000e-2(a). Both statutes require a plaintiff to establish a claim through one of two methods. The plaintiff may either demonstrate through direct evidence that his sex or age "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or he may proceed through the approach espoused in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination," *Hill*, 354 F.3d at 285.

Davis alleges no direct evidence that his adverse employment action was based on his age or sex and does not rely on this method in opposing the motion. He therefore must establish his case circumstantially using the *McDonnell Douglas* framework, under which he must first demonstrate a *prima facie* case of disparate treatment by showing that: (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) the position remained open or was filled by a similarly qualified individual from outside the protected class. *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011); *Hill*, 354 F.3d at 285. The Navy concedes that the first and third prongs are satisfied. *See* Def.'s Mem. Supp. Mot. Dismiss or Alternative Summ. J. ("Def.'s Mem.") at 15, ECF No. 7-1. Specifically as to the third prong, the parties agree that the only adverse employment action Davis suffered was his termination. *See id.* at 16; Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss or Alternative Summ. J. ("Pl.'s Resp.") at 11, ECF No. 12.

### A.  Legitimate Expectations

Davis fails to state a claim because he has not alleged facts sufficient to show he met the Navy's legitimate expectations at the time he was terminated. The *prima facie* case for age and sex discrimination "requires the employee to demonstrate that he was qualified in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514–15 (4th Cir. 2006) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)) (internal quotation marks omitted). In the Complaint, Davis describes in detail the job qualifications for the senior scientific/technical photographer position and asserts that he met those qualifications. Compl. ¶¶ 17–31. Neither party, however, disputes that Davis was qualified when hired, especially given

that he was selected for the position. But to state a *prima facie* case of discriminatory termination, rather than a discriminatory failure to hire, Davis needed to allege that his actual job performance met the Navy's legitimate expectations for his position. *Warch*, 435 F.3d at 514.

The Complaint is devoid of any facts on this point. Although Davis alleges at length how Schindler and Wolter were not qualified for his position, and how they did not perform satisfactorily, Compl. ¶¶ 59–76, he does not assert how he performed even in comparison to the areas where Schindler and Wolter were allegedly deficient – for example, whether he was punctual where Schindler was late, or whether he delivered photographs in a timely manner where Schindler or Wolter did not. When Davis does reference his job performance, the conclusions drawn are negative. He alleges that he "received so little flight time that he failed to maintain the required minimum," Compl. ¶ 55, and that he was "unable to help customers who did not receive their products from Schindler on time," *id.* ¶ 81. Granted, Davis alleges that Garay is responsible for these failures, but they nevertheless represent the only performance outcomes alleged, and from them, no inference can be made that Davis met the Navy's legitimate expectations.

Davis argues that Garay's expectations for him were, in part, illegitimate because Garay asked him to violate Defense Department regulations for releasing photographs and directed him to act contrary to the position description when he stripped him of his team leader status and ordered him to refrain from supervising Schindler and Wolter. Davis further argues that, by undermining his authority, Garay imposed impossible conditions that he cannot be faulted for failing to meet. Although instructions to violate Defense Department regulations would not be legitimate expectations, Davis does not allege how he complied with actual Defense Department regulations, which would help illustrate that he met legitimate Navy expectations. Likewise,

even if the position description for a senior scientific/technical photographer contemplates a "team leader" role, Davis has not alleged that he performed any of the non-supervisory or supervisory responsibilities with even minimum proficiency notwithstanding Garay's alleged interference. Davis, therefore, fails to establish that he met his employer's legitimate expectations at the time his employment was terminated. Counts I and II of the Complaint are dismissed without prejudice, with leave to amend the Complaint.

### B. Similarly Situated Employees

The Navy also argues that Davis's claims should be dismissed because he has not identified a similarly situated employee outside his protected class who was treated more favorably, because Schindler and Wolter were contractor employees whom Garay did not officially supervise. This argument does not provide a basis to dismiss the Complaint. First, as Defendant acknowledged, identifying similarly situated employees is not strictly required to establish a *prima facie* case for discriminatory termination when the plaintiff alleges that his position was either left open or filled by a similarly qualified individual outside the protected class. See Def.'s Mem. at 17; *Hill*, 354 F.3d at 285 (outlining the *prima facie* standard). Here, Davis alleges that, following his termination, "Garay attempted to install Schindler into Plaintiff's prior position," but that a week later, "a support contract position was created specifically for Schindler." Compl. ¶¶ 104–05. Although not entirely clear, these allegations support an inference that Davis's federal position was left open following his termination.[1]

---

[1] The Navy concedes this point in its reply memorandum. Def.'s Reply Mem. Supp. Mot. Dismiss or Alternative Summ. J. at 8, ECF No. 13 ("After Plaintiff left his employment, the Naval Test Wing Atlantic (NTWL) determined that they [*sic*] only required two part-time photographers."). Nevertheless, because Davis is granted leave to amend his Complaint as to the age and sex discrimination claims on other grounds, he would do well to clarify this point in the amended Complaint.

Second, although some formulations of the *prima facie* case for discriminatory termination describe the fourth prong as requiring a showing that similarly situated employees were treated differently, *see Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd on other grounds*, 132 S. Ct. 1327 (2012),[2] Davis has adequately pleaded such facts. To establish that an employee is similarly situated, plaintiffs must "show that they are similar in all relevant respects to their comparator," including "evidence that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Kelley v. United Parcel Service, Inc.*, 528 F. App'x. 285, 286 (4th Cir. 2013) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). *See also Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("'An employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity.'" (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000))). Davis alleges that Garay was his supervisor, Compl. ¶ 46, and that Garay essentially oversaw Schindler and Wolter's work. Specifically, Davis alleged that Garay set the flight assignments for Schindler and Wolter, decided how many and what type of assignments to give them, and awarded Schindler and Wolter increases in pay. *Id.* ¶¶ 47, 53, 54, 78, 98. Davis also alleged that Garay had directed Schindler and Wolter not to refer to Davis as "team lead" and allowed them to have direct access to photographic equipment and keyed access to the

---

[2] This factor appears to be relevant where the plaintiff has alleged that she was treated differently from similarly situated employees on disciplinary matters that were later used as grounds for termination, *see, e.g., Kelley v. United Parcel Serv., Inc.*, 528 F. App'x. 285, 286 (4th Cir. 2013); *Coleman*, 626 F.3d at 190-91, or where the plaintiff has based her allegations entirely upon a comparison to an employee from a non-protected class, *see, e.g., Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (alleging discrimination in promotion); *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013).

building where Davis worked. *Id.* ¶¶ 98, 100. These facts sufficiently allege that, for all intents and purposes, Garay directed their day-to-day activities, and that, at least organizationally, the three photographers shared a substantially similar working relationship with Garay and were subject to the same standards for flight assignments, image quality, and timely work output. *See* Compl. ¶¶ 65–75.

Although the Navy argues that Schindler and Wolter, by virtue of their status as contractors, are necessarily incomparable to federal employees as a matter of law, the case law it cites does not stand for the sweeping principle that all government contractors cannot serve as comparators simply because they are contractors. *See Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003); *Benjamin v. Holy Cross Hosp., Inc.*, No. 11-62142-CIV, 2013 WL 1334565, at *7–8 (S.D. Fla. Mar. 29, 2013); *Moore v. Sprint Commc'n Co.*, No. RDB-11-00290, 2012 WL 4480696, at *6 (D. Md. Sept. 27, 2012). Rather, whether a contractor is an appropriate comparator for an employee is a fact-based determination based on whether the contractor is effectively treated as an employee and essentially performs the same job. *See, e.g., Holland v. Gee*, 803 F. Supp. 2d 1339, 1345 (M.D. Fla. 2011) (concluding that a contractor could use full-time employees as comparators where, for all intents and purposes, she was a full-time employee except for her job classification), *rev'd in part on other grounds and aff'd in part*, 677 F.3d 1047 (11th Cir. 2012). *Cf. Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259–61 (4th Cir. 1997) (employing a fact-specific, multi-factor inquiry determine whether a contractor is an "employee" for the purposes of asserting a Title VII discrimination claim); *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981–82 (4th Cir. 1983) (same).[3]

---

[3] The Equal Employment Opportunity Commission ("EEOC") recognizes that certain personnel provided by an outside firm to work for a client entity, including the federal government, may qualify as an "employee" of the client entity within the meaning of federal

Moreover, the Navy's cited cases, all of which were decided at the summary judgment stage, are readily distinguished. In *Taylor*, the court found that the plaintiff had failed to show that similarly situated non-African-American employees were treated more favorably primarily because the comparator had his own truck and had worked for the company for several years longer. *Id.* at 581. Unlike in the present case, in *Benjamin*, the plaintiff claimed to have been subject to discrimination in pay, a claim for which the differing pay rules for employees and contractors necessarily made comparisons inappropriate. *Benjamin*, 2013 WL 1334565, at *7, *12. In *Moore*, a case brought under Maryland state discrimination laws, the court concluded that a regular employee was incomparable to one provided by a temporary staffing agency without identifying any information indicating that the temporary employee worked under the same rules and conditions as the permanent employee. *Moore*, 2012 WL 4480696, at *6.

Here, Davis's allegations suggest a more comprehensive and ongoing working relationship between Schindler, Wolter, and the Navy. At the Rule 12(b)(6) stage, the analysis is bound by the allegations in the Complaint, which indicate that the three photographers here were in substantially similar circumstances – the same individual, Garay, oversaw Davis, Schindler, and Wolter and controlled their assignments, regardless of whether he technically served as their supervisor. *See McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (noting that the requirement that a comparator have dealt with the "supervisor" could be met if the comparator dealt with the same "decision-maker"). Because Davis has sufficiently alleged that Schindler

---

employment discrimination laws, depending on whether "the clients have sufficient control over the workers" as determined by a factual analysis of "all aspects of the worker's relationship with the firm and the firm's client." *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, EEOC Notice 915.002 (Dec. 3, 1997), *available at* http://www.eeoc.gov/policy/docs/conting.html.

and Wolter were similarly situated comparators, the Court declines to dismiss Counts I and II of his Complaint under this theory.

### III.     Retaliation

Davis, in Count III, alleges retaliation in violation of Title VII. Under Title VII, employers are prohibited from taking adverse employment actions against employees because they oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Like his discrimination claims, Davis can establish retaliation through direct or circumstantial evidence. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006). Because he does not allege any direct evidence of retaliation, Davis must continue under the *McDonnell Douglas* framework and make a *prima facie* showing that (1) he engaged in a protected activity, (2) the employer took an adverse action against him, and (3) the adverse action was causally connected to his protected activity. *Id.* at 551 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

The Navy concedes that Davis has satisfied the first two prongs, but disputes that his termination was causally connected to his filing of a formal EEO complaint. A causal connection exists, however, "where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Davis alleges he filed a formal EEO complaint on May 16, 2012. Compl. ¶ 97. He was terminated 43 days later, on June 28. *Id.* ¶¶ 102, 103. Though the passage of time tends to negate the causal connection inference, *id.*, this Court has routinely found that durations of time similar to the one here appropriately established a causal link between the adverse action and the protected activity. *Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013) (concluding that a two-month interval satisfied the causal connection requirement); *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588-89 (D. Md. 2012) (same). Further, in

this case, Davis also alleges that, around the same day as his EEO filing, Garay took action to undermine Davis by directing Schindler and Wolter not to refer to Davis as "Team Lead" anymore. Compl. ¶ 98. Although Davis has acknowledged that the only adverse employment action at issue in this case was his termination, *see* Pl.'s Resp. at 11, Garay's instruction to Schindler and Wolter provides circumstantial evidence to support the conclusion that Davis's subsequent termination was retaliatory. Davis, therefore, properly alleges a plausible claim for retaliation. The Navy's Motion to Dismiss is denied as to Count III.

## CONCLUSION

For the foregoing reasons, and as stated in a separate Order, the Navy's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 7, is granted in part and denied in part. Counts I and II of the Complaint are dismissed without prejudice. Davis is granted leave to amend the Complaint as to those two Counts within 14 days. The Motion is denied as to Count III.

Date: 8/15/2014

THEODORE D. CHUANG
United States District Judge